**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 2:15cr150 |
| ) | |
| JUSTIN ALEXANDER CLARK, ) | |
| ) | |
| Defendant. ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, by through its attorneys Dana J. Boente, United States Attorney, and Elizabeth M. Yusi, Assistant United States Attorney, offers this position paper regarding the sentencing factors stated in 18 U.S.C. § 3553(a). The government has no objection to the content of the Presentence Investigation Report (PSR). According to the PSR, the correct advisory calculation under the United States Sentencing Guidelines (U.S.S.G. or "Guidelines") is 235-240[1] months' imprisonment. Based on the nature of the offense, the defendant's characteristics and related conduct involving child pornography, the United States asks the Court to impose a significant sentence of imprisonment and supervised release. In support of its position, the government states as follows:

**I. BACKGROUND**

On January 21, 2016, defendant JUSTIN ALEXANDER CLARK ("defendant" or CLARK) pleaded guilty to one count of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). The Court is scheduled to sentence the defendant on September 1, 2016. At that

---

[1] As the PSR correctly notes, this Guidelines range is restricted to a maximum of 240 months' imprisonment because Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), has a statutory maximum of 240 months' imprisonment.

time, the government will ask that the Court sentence CLARK to a significant term of imprisonment, followed by a lengthy term of supervised release.

The investigation leading to CLARK began in August 2013, when Homeland Security Investigations (HSI) Miami searched the residence of Target A in Miami Beach, FL, pursuant to a federal search warrant seeking evidence of the production and distribution of child pornography. HSI Miami seized multiple items of digital media, including a laptop computer, three iPhones and an external hard drive, which collectively contained a more than 40,000 images and 21,000 videos of minors engaging in sexually explicit conduct. The iPhones contained many files depicting infants and toddlers being tortured and sexually abused. The investigation of Target B in Miami, FL led investigators to an e-mail account which was subsequently determined to be controlled by Target B.

On March 25, 2014, members of the Polk County (FL) Sheriff's Office, in conjunction with HSI Tampa and HSI Miami personnel, located and arrested Target B pursuant to a John Doe arrest warrant issued in the District of Columbia. Post arrest, Target B admitted that he sexually abused his two step-grandchildren, MV1 (male victim 1) and MV2 (male victim 2), and created visual depictions of the abuse, including images and videos. Target B further admitted that he was the account holder of KIK Interactive/KIK Messenger user account "Bxxxxxxxx", and he used this account to communicate with individuals and share child exploitation materials, including the images and videos he produced of his step-grandchildren, as well as images and videos of other minor children engaged in sexually explicit acts with unknown adult individuals. Target B also admitted that he used several other social media services and email accounts to receive and distribute images and videos depicting minors engaged in sexually explicit conduct.

On April 21, 2014, a HSI Tampa Computer Forensics Agent extracted the KIK Messenger Contact table from Target B's cellular phone, which had been seized by HSI Tampa incident to Target B's arrest on March 25, 2014. HSI Tampa conducted a forensics analysis of the device based upon consent to search provided by Target B. Target B's KIK Messenger Contact List contained approximately 530 unique contacts, including approximately 5 contact groups. One such user who traded child pornography images with Target B was the KIK username JAY_ALEX33.

On May 6, 2014, HSI Cyber Crimes Center Child Exploitation Investigations Unit (C3/CEIU) sent a Law Enforcement Request (LER) to KIK Interactive for user account information and IP activity for Target B's KIK Messenger account, as well as the approximate 530 KIK Messenger Contacts identified on Target B's phone. On May 27, 2014, KIK Interactive responded to the LER and provided user account information for all identifiable accounts from Target B's KIK Contact List, including user JAY_ALEX3. Based on the KIK response, C3/CEIU determined that the KIK user account JAY_ALEX3 was being utilized by an individual who resided in the HSI Norfolk, VA area of responsibility, and sent a referral to HSI Norfolk to investigate further. The referral packet included the KIK response information as well as the KIK chat between Target B and JAY_ALEX33.

The following is a KIK chat recovered by HSI Tampa that occurred between on or about March 14, 2014, and March 22, 2014, between Target B and the person later identified as the defendant, CLARK:

March 14, 2014:

    JAY_ALEX33:        Trade?

March 22, 2014:

| | |
|---|---|
| JAY_ALEX33: | "Any new pics" |
| TARGET B: | "Yeah" |
| JAY_ALEX33: | "can I see" |
| TARGET B: | **sends image of child pornography depicting an adult male ejaculating on a prepubescent minor female |
| JAY_ALEX33: | "Yummy" |
| JAY_ALEX33: | "I love cum pics" |
| JAY_ALEX33: | "That's a sexy boy" |
| JAY_ALEX33: | **sends image of child pornography depicting a prepubescent male exposing his genitals in a lewd and lascivious nature for the camera |
| JAY_ALEX33: | **sends image of child pornography depicting a prepubescent male exposing his genitals in a lewd and lascivious nature for the camera |
| JAY_ALEX33: | "Hello" |
| JAY_ALEX33: | "You there" |
| JAY_ALEX33: | "??????" |
| TARGET B: | "Hold on…just got off work…" |
| JAY_ALEX33: | "send when you're ready" |
| TARGET B: | **sends a video that won't play in the recovered format |
| JAY_ALEX33: | "I can't get wmv videos" |
| JAY_ALEX33: | "They don't pay on my phone" |
| JAY_ALEX33: | "Okay" |
| JAY_ALEX33: | "*play" |
| TARGET B: | "get mx player…its plays all vids" |
| TARGET B: | **sends an image of child pornography depicting an adult male standing over a prepubescent male who is nude from the waist down, the adult male is spreading the minor's legs apart exposing his genitals in a lewd and lascivious nature. |
| JAY_ALEX33: | "I'm downloading it" |
| JAY_ALEX33: | "Got it" |
| JAY_ALEX33: | "Any vids of boys cumming" |
| JAY_ALEX33: | "Or being cummed on" |
| TARGET B: | **sends a video that won't play in the recovered format |
| JAY_ALEX33: | "That was ok hit any better" |
| JAY_ALEX33: | **sends an image of a prepubescent male being ejaculated on |

> JAY_ALEX33: **sends an image of a prepubescent male approximately 3-5 years old exposing his genitals in a lewd and lascivious nature

The KIK response provided to C3/CEIU indicated that the user JAY_ALEX33 registered his KIK Messenger account on October 21, 2013, and provided the name Jay-Alex Clark, the user name of JAY_ALEX33 and contact email: djocd33@gmail.com. The account application at that time was downloaded to a Metro PCS Android cell phone. KIK was also able to provide IP connection logs for the user account for between April 11, 2014, and May 12, 2014 which predominantly resolved back to T-Mobile.

A search of Facebook using the target email of djocd33@gmail.com resulted in finding a Facebook profile for Justin Alexander CLARK. CLARK's Facebook page indicated that he possibly lived in Norfolk and/or Virginia Beach, VA, during the time that the above KIK chat occurred. Furthermore, comments on CLARK's Facebook page indicate that people who know him call him "Jay".

On June 25, 2015, KIK provided updated subscriber information pursuant to a HSI administrative summons for the KIK user account of JAY_ALEX33. The response indicated that the user JAY_ALEX33 was still open and active and, as KIK revealed earlier, had been open since October 21, 2013. The user had updated the version of the application on a new phone but was still using the same username and the same contact e-mail. KIK also provided connection logs for the account for between May 26, 2015, and June 25, 2015, which resolved back to two primary IP addresses. One resolved back to T-Mobile, and the other IP address belong to Verizon FiOS in Newport News, VA.

Further investigation located CLARK at his residence in Newport News, Virginia. After advising CLARK of his rights under Miranda, HSI interviewed him. CLARK admitted that he

would chat with individuals on various social networking platforms and trade images of minors engaging in sexually explicit conduct. He stated he only used his cell phone for this activity and provided consent to law enforcement to seize and search his cell phone. Law enforcement analyzed CLARK's cell phone and found over 800 images and 20 videos depicting minors engaging in sexually explicit conduct. CLARK's cell phone also contained chats with other people using the KIK app. Ex. A, KIK Chats[2]. In these, the defendant talks with others about molesting younger relatives and asks for other users to make pictures of the children they molested. *Id.*

The National Center for Missing and Exploited Children (NCMEC) maintains a database of child pornography images and corresponding child victims who have been previously identified by law enforcement. Each set of images with known victims is designated as a series. The images found on the defendant's phone were sent to NCMEC. Thereafter, NCMEC provided a report indicating that the defendant's computer media contained approximately 175 images and 302 images files from 31 different known series of child pornography. Some of those known victims have provided impact statements, which were provided to the Court through the Probation office.

## II. STANDARDS GOVERNING SENTENCING

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 U.S. 85

---

[2] If necessary, the government will introduce this evidence through an HSI agent at sentencing.

(2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 90. Finally, in *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 49-50. The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

### III. THE GUIDELINES

In his position paper, the defendant discusses his concerns about the current state of the Guidelines dealing with child pornography. Admittedly, there are issues with the child pornography Guidelines, as discussed in the February 2013 Report to Congress by the United States Sentencing Commission. *See* U.S. Sentencing Commission: Federal Child Pornography Offenses (2013). The Sentencing Commission's report came out February 27, 2013 (the Report). The Commission has made some amendments, which are effective November 1, 2016,

7

but has left the majority of the Section 2G2.2 Guideline intact. Regardless, the Guidelines are still the correct place to start in determining an appropriate sentence for the defendant.

### IV. FACTORS UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

### A. Nature and Circumstances of the Offense and Defendant's History and Characteristics

The nature of the charge to which the defendant has pleaded guilty, receipt of images of minors engaging in sexually explicit conduct, in and of itself calls for a substantial term of imprisonment. This is not a victimless crime. The victims are and continue to be the children depicted in the images. The "use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child" used in the production of the pornographic material. *Osborne v. Ohio*, 495 U.S. 103, 109 (1990). Furthermore, collecting child pornography images feeds a market that preys upon other children by creating a demand for more of the images. *Osborne v. Ohio*, 495 U.S. 103, 109-11 (1990).

Additionally in this case, the defendant was not just an anonymous voyeur on the Internet. He was making one-on-way relationships with other "like-minded" individuals who also were sexually interested in children. CLARK distributed images and videos of the sexual

abuse of children on a regular basis. And, as evidenced by the chats, CLARK was encouraging others to molest children and make pictures so he could collect them. CLARK even talks about sexual play with a 10 year old relative when he was 14 years old. In addition, he and his KIK friend start to talk about how to get a kid to molest together. CLARK states "family members are best." While the defendant may state this is just "talk," this is very disturbing and evidences a young man who shows a genuine sexual interest in children and his desire to engage in sexual activity with children. He's clearly thought about which children would make easier target and even states the youngest he would molest would be 7 years old.

The Court should take these aspects of the defendant's crime and characteristics into consideration when deciding what a reasonable sentence should be for the defendant.

  **B.**  **Defendant's Criminal History**

The defendant has little relevant criminal history. However, this is a young man and, as this Court knows, this is not unusual in child pornography cases. Therefore, this should not be given much weight in the Court's determination of a sentence.

  **C.**  **Need to Deter Future Criminal Conduct and to Protect the Public**

Defendant's sentence needs to accomplish the twin goals of deterring the defendant from engaging in future criminal conduct and to protect the public. The government avers that, if given the opportunity to molest a child, or go back on the Internet to search for like-minded individuals, the likelihood that CLARK will return to this behavior in the future is strong due to his obvious sexual attraction to minors.

  **D.**  **Need to Provide Treatment to Defendant**

Due to the nature of the defendant's crimes, the defendant should be ordered to participate in a sex offender treatment program while incarcerated.


### E. Need to Avoid Unwarranted Sentencing Disparities

CLARK's crimes, history and characteristics, along with his actions related to the crimes of conviction, all support a severe sentence of imprisonment. As such, the need to avoid unwarranted sentence disparities clearly weighs in favor of a significant sentence of imprisonment. 18 U.S.C. § 3553(a)(6).

In comparison to other defendants this Court has seen before it charged with receipt and distribution offenses, CLARK's involvement with child pornography and the sexual abuse was much more significant. For instance, in *United States v. William Joseph Clark*, 2:15cr87, the Court sentenced William Clark to 72 months' imprisonment. William Clark, like CLARK in this case, apparently had a difficult upbringing and family life. However, William Clark did not distribute child pornography like CLARK. And, while he appeared to have significant mental health issues, Williams Clark was not involved in communities of other sex offenders and was not encouraging other offenders to molest children such as CLARK here.

Thus, the need for unwarranted sentencing disparities calls for a significant sentence of imprisonment and a lengthy term of supervised release.

## V. CONCLUSION

The government agrees that the PSR's Guidelines calculations are correct. For the reasons stated above, the government asks the Court to impose a significant sentence of imprisonment and supervised release.

    DANA J. BOENTE
    UNITED STATES ATTORNEY

By:   /s/ Elizabeth M. Yusi
       Elizabeth M. Yusi
       Assistant United States Attorney

          Attorney for the United States
          United States Attorney's Office
          101 West Main Street, Suite 8000
          Norfolk, VA 23510
          Office Number:  757-441-6331
          Facsimile Number: 757-441-6689
          E-Mail Address: elizabeth.yusi@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of August, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Andrew Grindrod, Esq.

I FURTHER CERTIFY that on this 25th day of August, 2016, I caused a true and correct copy of the foregoing Position of the Government with Respect to Sentencing Factors to be e-mailed to the following:

Karen Franklin
U.S. Probation Officer

/s/ Elizabeth M. Yusi
Elizabeth M. Yusi
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Phone: 757-441-6331
Fax: 757-441-6689
E-mail: elizabeth.yusi@usdoj.gov